# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| FULLER'S PHOTOGRAPHY STUDIOS, LLC | § | |
| *Plaintiff* | § | |
| | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| | § | |
| ALLSTATE INSURANCE COMPANY | § | |
| *Defendant* | § | |

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---



**Insurer delayed and underpaid covered claims and failed to conduct a reasonable investigation for the policyholder.**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, PLAINTIFF, Fuller's Photography Studios, LLC (hereinafter the "Plaintiff") complaining of and against Allstate Insurance Company (hereinafter "ALLSTATE" or "Defendant") and hereby respectfully shows unto the Court and Jury as follows:

### I.    PARTIES

1.    Plaintiff, Fuller's Photography Studios, LLC is a limited liability company doing business in and located in Jasper County, in the state of Texas.

2.    Defendant, Allstate Insurance Company is a for-profit, foreign insurance company doing business in the state of Texas with its principal place of business in Northbrook, Illinois

(hereinafter "ALLSTATE").  Allstate may be served with process by serving its registered agent for service: Registered Agent C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## II.    JURISDICTION AND VENUE

3.    The Court has jurisdiction over this dispute pursuant to 28 U.S.C. §1332(a)(1) because Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds $75,000, excluding interest and costs.

4.    Furthermore, Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §2201(a) and 28 U.S.C. §2202 to determine whether it has coverage for the claims it seeks pursuant to the terms of its insurance policy.

5.    Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of Texas, and Plaintiff's principal place of business is situated in this district. Moreover, all the properties that are affected and part of this lawsuit are situated in this district.

6.    Allstate engages in the business of insurance in the State of Texas.  The conduct of Allstate in the State of Texas includes:

    (a) The making and issuing of contracts of insurance with the Plaintiff;

    (b) The taking and receiving the application of insurance for insurance from the Plaintiff;

    (c) The receiving or collection of premiums, commissions, membership fees, assessments, dues or other consideration for any insurance or any part thereof, including any such consideration or payments from the Plaintiff; and

    (d) The issuance or delivery of contracts of insurance to residents of this state or a person authorized to do business in this state, including the Plaintiff.

### III.    CONDITIONS PRECEDENT

8.      All conditions precedent to recovery have been performed, waived, or have occurred.  Notice has been given under the various statutes, including Texas Insurance Code Chapter 542A and Plaintiff has met its other duties after this loss.

### IV.    FACTS

A. <u>Plaintiffs had specific coverage for this type of loss.</u>

9.      ALLSTATE sold Plaintiff a policy of insurance to cover its business, policy number 648618131 (hereinafter referred to as the "policy"). The policy in question contained coverage for windstorm and hurricane damages including property damage, business personal property and loss of business income.   During the underwriting process, ALLSTATE determined that the risk was acceptable without any modifications, alterations, changes to the property or any specific exclusions based on the condition of the property.

10.      The insuring agreement required the Plaintiff to make payments to Allstate and in exchange Allstate would indemnify the Plaintiff in the event of a covered loss.  Plaintiff faithfully paid the required premium and the relevant policy is currently in full effect, providing property, loss of income, and other coverages.

11.      Plaintiff reasonably expected that the policy purchased from Allstate included coverage for windstorm and hurricane damage to his property and to protect him from loss of income and use of the property.

B. <u>Hurricane Laura damaged Plaintiff's property and disrupted its business.</u>

12.      On or about 8/27/2020, Plaintiff's business property sustained damages from Hurricane Laura.

13.     Hurricane Laura reached Category 4 status with wind speeds of 150 MPH and gust of 185 MPH as landfall was made around 1:00 AM on August 27, 2020 near Cameron, Louisiana. Hurricane Laura maintained 140 MPH wind speed with gust of 185 MPH as it passed just east of Hackberry, Louisiana.  Laura maintained Category 4 status until passing Dequincy, Louisiana. Hurricane Laura maintained Level 1 status until passing Jonesboro, LA.

14.     The property in question is less than thirty from passage of the eye center. Hurricane force winds extended out from the eye sixty miles.  The property in question sustained hurricane-forced winds, including gusts in excess of sustained winds, from the only Category 4 hurricane to make landfall in Louisiana.  Terry Shipman, P.E., opined after researching the storm and reviewing the property:

> The property is less than thirty miles from passage of the eye center.  The closest passage of the eye to the property had HNC reports of sustained winds of 110 MPH with hurricane force winds extending out from the eye sixty miles.  The area likely experienced wind speeds of 90 to 100 MPH which is great enough to cause outside envelope damage to composition shingles and some structural damage.

15.     Because of the severity of Hurricane Laura, the Plaintiffs were under mandatory evacuation beginning on August 25th and extending until September 4th.

16.     Connor Fuller, on behalf of Fuller's Photography LLC, walked the property and showed to the adjuster what he knew to be damage including roof failures, destruction of its sets, as well as damage to the interior of its buildings.  Plaintiff reported the property damage to Allstate on September 1, 2020. As a result of this damage, Plaintiff sustained a heavy loss of business income. In addition, Plaintiff filed a claim with Allstate for the loss of business income caused by the storm. Plaintiff asked Allstate to cover damages related to property damages, business personal property damages and business income damages.

C.  <u>Plaintiff promptly filed his insurance claim and ALLSTATE delayed payments.</u>

17.    Plaintiff filed a claim with Allstate for the damages to the property caused by Hurricane Laura. Plaintiff asked that Allstate cover the cost of repairs to the property pursuant to the policy and any other available coverages under the policy.  Plaintiff Fuller immediately took steps to protect the property from further damage, including moving its equipment into dry areas so that it would not sustain any more damage.

18.    Allstate outsourced its investigative duties, claims handling, and coverage decisions to Phillip Cowden. Upon information and belief, Allstate does not have internal field adjusters, and despite collecting Plaintiff's premiums each year, and collecting the premiums of each of its policyholders, outsourced the inspection to an out of state adjuster. Significant events in the claims handling are summarized in the table below:

| Date | Activity |
|---|---|
| 8-25-20 | Disaster declaration issued for Jasper County, TX |
| 8-27-20 | Hurricane Laura strikes Plaintiff's property and it sustains damage, which leads to damage to business personal property and a loss of business income |
| 9-4-20 | Disaster declaration ends for Jasper County, TX |
| 9-4-20 | Inspection by adjuster Phillip Cowden and requests for help with LOI claim as well as property damage and inventory. |
| 9-8-2020 | Plaintiff receives estimate and initial payment from ALLSTATE for $8,160.72 for Coverage A. |
| 10-4-2020 | Plaintiff requests re-inspection, and ALLSTATE finds an additional $12,119.85 in covered damages to the property that was left off of the prior estimate from one month prior. |
| 10-16-2020 | ALLSTATE hires Forte Consulting to adjust the loss of income portions of the claim; Forte Consulting estimates the LOI from August 27th— September 30th to be $2,188.92 in payable covered losses. |
| 10-30-2020 | Forte Consulting revises its estimate resulting in LOI payment for $4,472.57 in loss in income and extra expenses relating to the hurricane – neither this payment or the earlier adjustment accounts for the true loss of income and extra expense incurred by the insured. |
| 11-2-2020 | ALLSTATE issues payment for $4,472.57 according to Forte Consulting report. |
| 11-10-2020 | 542A Notice with accompanying exhibits, including:<br>• Contractor's Estimate (totaling $238,877.02 in property damages) |

| | |
|---|---|
| | • Engineering Report from Terry Shipman |
| **11-25-2020** | ALLSTATE requests another re-inspection |
| **12-2-2020** | Re-inspection occurs |
| **12-9-2020** | Counsel for Plaintiff provides ALLSTATE with the lease for temporary office space. Plaintiff is required to sign a temporary lease, extending lease another 3 months, since building is unusable due to the Hurricane, that extends the lease until February 2021. |
| **1-12-2020** | Counsel for Plaintiff again requests the lease payment be reimbursed. To date, it has not been paid. |

19.    ALLSTATE'S initial property loss adjustment was inadequate, without limitation,

in these respects:

- Failing to include loss adjust for, at the minimum, the scope of damages prepared by Rimkus for Allstate Insurance Company;
- Failing to include sufficient repairs to the brick veneer and address wall movement; and
- Failing to address necessary interior repairs.

20.    Due to the damages that were sustained and under investigated and under paid by

ALLSTATE, Plaintiff's business remained closed and was unable to book clients for photography

sessions.  Plaintiff asked ALLSTATE to pay for the covered damages under the Policy and for all

available coverages pursuant to the Policy, including for loss of business income.

21.    ALLSTATE knew that Plaintiff was unable to use its staging area, its office, its

studio, and property to operate its business.  Nevertheless, ALLSTATE delayed payment for

relocation of the office and delayed and underpaid the covered loss of income and extra expense

realized by Plaintiff and, as a result, Plaintiff sustained damages and continues to sustain damages

as a result of the tardy payments and loss adjustment.

22.    ALLSTATE failed to perform its contractual duty to adequately compensate

Plaintiff under the terms of the policy.  Specifically, it failed and refused to pay full proceeds of

the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover

the damaged Property and all conditions precedent to recovery upon the Policy had been carried

out and accomplished by Plaintiff.  Allstate's conduct constitutes a breach of the insurance contract between Allstate and Plaintiff.

23.     ALLSTATE'S conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practice.  TEX. INS. CODE §541.060 (a) (1).

24.     ALLSTATE failed to attempt to settle Plaintiff's claim in a fair and equitable manner, although liability to pay Plaintiff's was reasonably clear.  ALLSTATE'S conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060 (a)(2)(A).

25.     ALLSTATE failed to conduct a reasonable investigation.  Specifically, Allstate performed an outcome-oriented investigation by ignoring evidence supporting coverage. Allstate's unreasonable investigation resulted in a biased, unfair, and inadequate evaluation of Plaintiff's losses and resulted in further damage to Plaintiff's property.  Allstate's conduct constitutes a violation of the TEXAS INSURANCE CODE, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(7).

26.     Allstate failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiff's claim, beginning an investigation of Plaintiff's claim, and requesting all information reasonably necessary to investigate Plaintiff's claim within the statutorily mandated time of receiving notice of Plaintiff's claim.  Allstate's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims.  TEX. INS. CODE §542.055.

27.     Upon information and belief, the Allstate has accepted the policy premiums with no intention of providing full coverage under the insuring agreement.

## V.    CAUSES OF ACTION

<u>COUNT 1: ALLSTATE breached its contract with Plaintiff.</u>

28.    Plaintiff re-incorporates by reference the above paragraphs as if stated herein more fully.

29.    To prevail on a valid breach of contract claim, a plaintiff must prove that 1) there was a valid contract; 2) that plaintiff has performed its obligations under the contract or tendered performance; 3) that the defendant has breached the contract in some manner; and 4) plaintiff has sustained damages as a result of defendant's breach. *See Brooks v. Excellence Mortgage, Ltd.*, 486 S.W.3d 29, 36 (Tex.App.—San Antonio 2015, pet. denied).

30.    At the time Hurricane Laura damaged Plaintiff's property, Plaintiff had in place a policy issued by Allstate. Defendant does not dispute that a valid contract was in place.

31.    Plaintiff's premiums were current, and all conditions precedent to recovery were made. Furthermore, Plaintiff fulfilled the obligations under the policy, and more specifically, executed the duties under the contract after the loss.

32.    Allstate wrongfully failed to comply with the terms of the contract, as it relates to their duties after loss, by failing to promptly pay for covered damages. Allstate is therefore in breach of the contract of insurance issued to Plaintiff.

33.    Allstate's conduct constitutes a breach of contract resulting in damages to the Plaintiff.

<u>COUNT 2: ALLSTATE violated the Deceptive Trade Practice Act.</u>

34.    Plaintiff re-incorporates by reference the above paragraphs as if stated more fully herein.

35.     Plaintiff is a "consumer" as defined by TEX. BUS. & COMM. CODE § 17.45(4). Plaintiff sought or acquired goods or services by purchasing those goods or services from Allstate. Allstate violated the TEXAS DECEPTIVE TRADE PRACTICES ACT ("DTPA") (TEX. BUS. & COM. CODE §17.44 et seq.) because it engaged in false, misleading and/or deceptive acts or practices that Plaintiff relied on to its detriment.

36.     The acts and omissions of Defendant also constitute violations of the Texas Deceptive Trade Practice Act, including, but not limited to:

a.     Committing false, misleading or deceptive acts or practices as defined by §17.46(b); and

b.     Use of employment of an act or practice in violation of the Texas Insurance Code Chapter 541.151 et seq. as described herein.

37.     The acts and omissions of Defendant was a producing cause of the Plaintiff's damages.

38.     Defendant's conduct was committed knowingly and/or intentionally because, at the time of the acts and practices complained of Defendant had actual awareness of the falsity, deception or unfairness of the acts or practices giving rise to Plaintiff's claim and acted with a specific intent that Plaintiff act in detrimental reliance on the falsity or deception and/or in detrimental ignorance of the unfairness.

39.     Plaintiff gave Defendant notice as required by DTPA §17.50(a), and time to respond to such notice has expired.

<u>COUNT 3:  ALLSTATE  violated §541 et seq. TEXAS INSURANCE CODE.</u>

40.     Plaintiff re-incorporates by reference the above paragraphs as if stated herein more fully.

41.     Allstate violated the TEXAS INSURANCE CODE § 541 et seq.  because it engaged in unfair and/or deceptive acts or practices in the business of insurance.  Specifically, its acts and omission include violations of:

    (a)     Tex. Ins. Code §541.051;

    (b)     Tex. Ins. Code §541.052;

    (c)     Tex. Ins. Code §541.059;

    (d)     engaging in unfair settlement practices by:

        (i)     misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue TEX. INS. CODE §541.060(a)(1);

        (ii)    failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim with respect to which liability has become reasonably clear TEX. INS. CODE §541.060(a)(2);

        (iii)   failing to promptly provide Plaintiff a reasonable explanation of the factual and legal basis in the policy for the denial of the claim TEX. INS. CODE §541.060(a)(3);

        (iv)    failing to affirm or deny coverage within a reasonable time or submit a reservation of rights letter TEX. INS. CODE §541.060(a)(4); and

        (v)     refusing to pay a claim without conducting a reasonable investigation of the claim TEX. INS. CODE §541.060(a)(7).

    (e)     misrepresenting Plaintiff's insurance policy by:

        (i)     making an untrue statement of material fact TEX. INS. CODE §541.061(1);

        (ii)    failing to state a material fact that is necessary to make other statements made not misleading, considering the circumstances under which the statements were made TEX. INS. CODE §541.061(2); and

        (iii)   making a statement in such a manner as to mislead a reasonably prudent person to a false conclusion of a material fact TEX. INS. CODE §541.061(2); and

(f)      §17.46(b) of the TEXAS DECEPTIVE TRADE PRACTICE ACT, incorporated by TEXAS INSURANCE CODE §541.151.

42.     Defendant's conduct was committed knowingly because it had actual awareness of the falsity, unfairness or deception of their acts or practices made the basis for Plaintiff's claim for damages under the TEXAS INSURANCE CODE.

43.     Plaintiff gave Defendant notice as required by §541.154 of the TEXAS INSURANCE CODE. The time to respond to such notice has expired.

44.     Defendant's conduct described above was a producing cause of Plaintiff's damages.

COUNT 4:  ALLSTATE  violated the Texas Prompt Payment of Claims Act

45.     Plaintiff re-incorporates by reference the above paragraphs as if stated herein more fully.

46.     Allstate violated the Texas Insurance Code Ch. 542 and 542A because it failed to do the following within the statutorily mandated time of receiving all necessary information:

(1) Failing to timely acknowledge the Plaintiff's claim;

(2) Failing to commence an investigation of Plaintiff's claim;

(3) Failing to request all information reasonably necessary to investigate Plaintiff's claim within the statutorily mandated deadlines;

(4) Failing to give proper notice of the acceptance or rejection of part or all of Plaintiff's claim;

(5) Failing to accept or deny Plaintiff's full and entire claim within the statutorily mandated time of receiving all information;

(6) Failing to pay Plaintiff's claim without delay; and

(7) Failing to include the requisite penalty interest on any and all payments made beyond the statutorily designated time to make payment in full for Plaintiff's claim.

47.     ALLSTATE violated the Texas Insurance Code Ch. 542 by:

(1) Knowingly misrepresented to the Plaintiff pertinent facts or policy provisions relating to coverage;

(2) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the policy;

(3) Not attempting in good faith to effect a prompt, fair, and equitable settlement of the claim when liability became reasonably clear; and

(4) Compelling Plaintiff to institute a suit to recover an amount due under the policy by offering substantially less than the amount ultimately recovered in the suit brought by Plaintiff.

48.     Such failures constitute violations of Texas Insurance Code §§ 542.055, 542.056, 542.057, and 542.058 and §542A.001 et seq.  As a result of the foregoing violations, Plaintiff requests damages under Texas Insurance Code § 542.060.

COUNT 5: ALLSTATE  breached its duty of good faith and fair dealing.

49.     Plaintiff re-incorporates by reference the above paragraphs as if stated more fully herein.

50.     Allstate owed Plaintiff a duty of good faith and fair dealing including the duty to pay covered claims when liability is reasonably clear. Allstate breached this duty when it conducted an unreasonable investigation, denied Plaintiff's claim, and misrepresented material facts because Defendant knew or should have known that it was reasonably clear that Plaintiff's claim was covered.  Defendant's breach of this duty was a proximate cause of Plaintiff's damages.

COUNT 6: Fraudulent Misrepresentations

51.     Plaintiff re-incorporates by reference the above paragraphs as if stated more fully herein.

52.     Allstate made various representations to the Plaintiff regarding the claim, including material representations regarding the extent of damages sustained to Plaintiff's business, business property, and/or loss of income, which included material representations regarding policy coverages, whether or not claims were covered, the value of claim, the application of policy exclusions, and the severity of the damage which were material and false.  At the time Allstate made the representations, it knew the representations were false or made the representations recklessly as a positive assertion without knowledge of the truth. Defendant made these representations with the intent that the Plaintiff act on them by not further pursuing claim or thinking there was no other money to recover.  Plaintiff relied on the representations and this caused injury.

53.      A breach of fiduciary duty is a form of constructive fraud.  The acts and omissions of Allstate constitute constructive fraud.

## VI.     AMBIGUITY

54.     The policy in place at the time of the date of loss, policy number 010 648 618131 contained patent and latent ambiguities concerning the terms of the policy governing the insured's duties after loss, coverages, exclusions, and/or policy endorsements.

## VII.     WAIVER AND ESTOPPEL

55.     Allstate has waived and are estopped from asserting any coverage defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights letter to Plaintiff.

## VIII.   DAMAGES

56.     As a direct result of Defendant's conduct, Plaintiff has suffered economic damages all of which are entitled to recover.  Plaintiff is entitled to recover, in addition to the amount of the

claim, interest on the amount of the claim at the rate of 10 percent a year as damages, together with reasonable attorney's fees.

57.     Pursuant to the DTPA and the TEXAS INSURANCE CODE, Plaintiff is also entitled to recover treble damages because Defendant's conduct was committed knowingly.

58.     Plaintiff is entitled to exemplary damages as a result of Defendant's breach of duties owed. When viewed objectively from the standpoint of the Defendant at the time of the occurrence in question, Defendant's conduct involved an extreme degree of risk, considering the probability and magnitude of the harm to others and which the Defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

## IX.     ATTORNEY'S FEES

59.     Pursuant to TEXAS CIVIL PRACTICES & REMEDIES CODE §§38.001, *et seq*., DTPA § 17.50(d), and TEXAS INSURANCE Codes § 541.152 and §542.060, Plaintiff seeks recovery of reasonable and necessary attorney's fees and court costs.

## X.     PRAYER AND JURY DEMAND

60.     For these reasons, Plaintiff asks for judgment against Defendant for economic damages, treble damages, exemplary damages, reasonable and necessary attorney's fees, pre-judgment and post-judgment interest as allowed by law, costs of suit, and all other relief to which Plaintiff may show as entitled.  Plaintiff requests a trial by jury and tender the appropriate fee with the filing of this petition.

Respectfully Submitted,
THE BRASHER LAW FIRM, PLLC



By: _____

Clint Brasher
Texas Bar No. 24009915
clint@brasherattorney.com
Nishi Kothari
Texas Bar No. 24087862
nishi@brasherattorney.com
Joe Muckleroy
Texas Bar No. 24065801
joe@brasherattorney.com
905 Orleans St.
Beaumont, TX 77701
(409) 832-3737 Telephone
(409) 832-3838 Fax
*Attorneys for the Plaintiff*